The last case this afternoon is 4111022, Henry Brandon P. For the appellant is Catherine Hart, for the appellee is David Manchin. Ms. Hart, you may proceed. May it please the court. Counsel. Counsel. My name is Catherine Hart of the Office of the State Defender, and I represent the minor respondent, Brandon P. The Illinois and the United States Constitution give every person charged with a criminal offense the right to confront his accuser. This right is triggered when the accuser makes a statement that is considered testimonial hearsay, and that statement is used as evidence at trial. In order to satisfy the confrontation clause, the accusing witness must be available at trial or the statement cannot be made. Trial courts make two determinations when considering whether to allow in as evidence at trial the hearsay statement of an accusing witness. One, is the witness available at trial? And two, is the statement testimonial hearsay? This court ordered the parties to be prepared to address eight cases that analyze when a witness is unavailable at trial. Though in this case, the trial court found the witness unavailable to testify with the full agreement of the state and the defense. As such, the state, which was in full agreement that the witness was unavailable, has waived the issue of whether this witness was in fact available because they agreed to it at trial and on appeal before this court. Let me ask you about that. You were kind enough to provide the record on the key portion of the examination of this child, Maya. MJ, I guess, is her initials. And the record shows that the prosecutor was asking her questions, and she was four years old at the time, and she was having difficulty responding and shaking her head back and forth and up and down, depending upon the circumstances. And finally, the following occurs. Her mother says she's getting confused and you want to talk to us, no response. The court says she shrugs her shoulders. The prosecutor says, can I have just a minute? The court says, no. This is a main question. You can't talk to her separately. Then the mother says, can I say something? And the judge says, no. And then the prosecutor says, Your Honor, I'm not going to ask any other questions. And the court says, Mr. Johnston? Mr. Johnston says, no questions, Your Honor. All right. You may go. Yes. So two points about that. One, did anything inhibit defense counsel from asking any questions? Well, the witness is really not available to testify. There's no direct examination. Didn't the trial judge, by asking Mr. Johnston to proceed, invite him to do so if he chose? The prosecutor says, Your Honor, I'm not going to ask any other questions. The court says, Mr. Johnston? The defense attorney could have asked questions, but it's entirely reasonable to not ask questions of a witness who can't respond. The second point about all this is the finding of unavailability wasn't made at that point. It wasn't made until the court mused about the subject somewhat later on. Isn't that correct? The court wished to give the state another chance to bring her back at trial. In fact, when the state brought Officer Hogan to testify, the defense has no burden. But the question is, with regard to the 115-10 statements, the case law we cited says that if the witness testifies at trial, then there's no Sixth Amendment issue about hearsay statements coming in. I think that that's key, that the witness testifies at trial. Now, we have, and other cases, not just before this, you pointed out, the key isn't whether the witness testifies. The key is, is the witness available for cross-examination? Well, I think it's a little bit more complicated than that. And if you look at, for instance, People v. Coleman, which is the Fourth District case. Which one? People v. Coleman, which is a Fourth District case. It predates Crawford v. Washington. It certainly does, and I was going to point that out. Not only does it predate, but it says it's based upon its decision of Idaho v. Wright, which was an example of applying Ohio v. Roberts, and all of the case law of Ohio v. Roberts in confrontation has been repealed, has been repudiated, essentially, with the sole exception of preliminary hearing testimony. However, Coleman is interpreting whether a witness is available or unavailable under 115.10, and 115.10 still applies in the state of Illinois. Well, but 115.10 applied the question of, was this witness here, and what did the trial judge say about the witness? He permitted the statements to the third parties to come in, did he not? Under 115.10, it only comes in if the witness is unavailable. If the witness is available, they have to testify, and this witness didn't testify. So your position is there's a different standard, and is a witness available for cross-examination under the Sixth Amendment than there is under 115.10? I don't believe that there is a different standard, but I believe in a situation like this, which is not a memory loss case, this is not a case where the witness got up on the stand and testified at length, whether about the actual acts which have been accused or not, and then had memory loss as to when cross-examined, or even in some of the cases that you asked us to be clear with. Well, it's not a question of memory loss, it's a question of unwillingness to testify. Sharp has no memory loss, she just wouldn't say. But she did testify at length on direct examination about a whole host of things. About as your office characterized it, nothing to do with the crime with which the defendant was charged, may you correct to so characterize it. But she testified. She testified. Okay. She was able to answer questions at length. And what did we say in that case and the other cases? The crux wasn't the fact that she failed to testify on direct examination. Was she available for cross? But nonetheless, Crawford requires that a witness, all of those cases which have to do with memory loss, the witness testified. They're competent as a witness. They got up, they testified. Whether they are able to testify as to the acts that are charged, sometimes there's a question of memory loss, and sometimes there isn't. Sometimes they just don't testify exactly the same as they're supposed to. And then a variety of different things happen on cross-examination. Well, in this case, Maya didn't testify at all. She was incapable of testifying. We don't know that on cross-examination, though, since no cross was attempted. But in order to get to cross-examination, the witness has to be available to testify, period. It's not just was she available at cross-examination. Did she appear at trial? And does appearance at trial mean more than that she simply sat there? Yes, the Sixth Amendment requires more. And you can look at people versus learn, but you can also look at other cases that talk about it requires more than simply being present. When you're talking about confrontation clause and available to testify and appearing for cross-examination, all of those things are important. And this witness did not appear to testify. She just sat there. Here's the problem with that. It's entirely possible, indeed probable, that had she been cross-examined, she would have not responded. But if that's the focus, as Cesar Cordova and Major Flisk and all these other cases say, the focus is did she respond at cross-examination, then we're in a speculative mode in this record because the court turned to defense counsel after the state said no further questions, and defense counsel said I have no questions. The issue here is in addition to was there cross-examination, was there any testimony at all? Did she appear to testify? And this little girl did not appear to testify. So if she cannot be a witness at trial, she certainly cannot be cross-examined. But counsel, you're conflating two concepts. The case law in this state, and this court has been a big part of it, has explained the appearance to testify as meaning is she available for cross-examination. And why should we, given how easy it is to attempt to cross-examine a witness, why should we engage in speculation that the cross-examination would have been for naught, it may very well have been for naught. Given the importance of all this, why shouldn't we have the record before us where she answers no questions on cross-examination at all, and if that's supposed to be the crux of the focus, we don't have it here. In other words, put the burden on the defense to say, if you don't think she's going to be responsive on cross, ask and make a record and let's see. Here, he says, I have no further questions. We addressed this in Laura. Talked about, hey, well, I can understand why defense counsel might not want to ask questions. Good tactics. I understand your strategy. But we're not impressed, for purposes of the Sixth Amendment, with that attitude. But in Laura, the witness actually does testify on direct. And in this case, she doesn't. And people versus Garcia-Cordova, the Second District of the Appellate Court, found that the complainant did appear for cross-examination. I'm sorry, that's a lot. I apologize. The Appellate Court in Sundling, which came out around the same time as Garcia-Cordova, again, Second District, distinguished learns, stating that the witness and learned lacked the ability to answer questions, as opposed to simply a memory loss. Now, could the defense attorney have tried and not gotten any answers? He could have, but it was not his burden to do so. Well, it is his burden if he wants to claim that my Sixth Amendment rights are being violated. I don't believe that's correct, Your Honor. I believe that a witness has to actually appear to testify before they then issue a motion to cross-examine. You're assuming, and we addressed this explicitly in SHARP and rejected the idea, that the infirmities associated with problems with direct examination can be projected onto cross. No. If there are problems with cross-examination, or direct examination, the crux of the analysis will be the cross-examination, and what does the witness have to say there? Were you given an opportunity? As a matter of fact, Counsel, a per curiam opinion of the United States Supreme Court dealing with one of its standard reversals of the Ninth Circuit Court of Appeals from six weeks ago, Nevada v. Jackson, dealt with a claim where the Ninth Circuit had reversed the Nevada Supreme Court on habeas corpus, determining that the petitioner was denied a right to present a complete defense and was barred from presenting extrinsic evidence of a victim's prior accusations of sexual assault. The claim was, well, we're entitled to present that, and we were restricted, and our cross-examination of the witness was barred. It wasn't the issue before us at all, but six weeks ago the Supreme Court of the United States said this, they cited Delaware v. Fenster as observing that the confrontation clause is generally satisfied where the defense is given a full and fair opportunity to expose testimonial infirmities through cross-examination. How is a defense attorney given that opportunity with a witness who is incapable of answering questions? Counsel, you keep saying that, but would you agree that the minor did answer several questions? I grant you that she definitely clammed up when they got to the issue, but this wasn't a situation like in LEARN where the child just refused to say anything. If you look at this entire, which I did append to the supplemental brief, if you look at this entire question and answer, she is very hesitant to answer any questions. Even when asked, do you have a sister, what's her name, everything has to be pulled from her. She mostly is not verbal. They never determine whether she knows the difference between the truth and the lie. All of these things show that she did not testify within really the meaning of Sixth Amendment case law. And to say that the defense attorney had an obligation to try and cross this little girl who was clearly upset and unable to, she was shutting down, whatever that means. And we don't know what that means because the state didn't, on the record, make an objection to the court's finding that she was unavailable. There was no discussion of, well, this is why she's unavailable and this is why I don't think she was unavailable, because everybody agreed that she wasn't present. She did not appear to testify. And because she was unavailable to testify, her testimony, her statement to Officer Hogren should not have come in because it was testimonial, per se. You asked the question earlier, what could the defense have done? And it seems to me pretty easily when the judge said, the state says I have no further questions, and the judge says Mr. Johnson could have started asking questions. Why is this, not only why is this hard, but the cases that we've cited to you, Bryant, Sharp, Major Fisk, Cesar Cordova, all were decided a long time before this case ever went to trial, where the focus was what was your opportunity for cross-examination counsel? But the first question still should be, the first question should be did the witness appear to testify, period, much less for cross-examination. And it's the state's burden to bring a witness to testify. Well, that goes back to what I've asked before. Are you saying that this appearance is a different standard under 115-10 than it is under the Sixth Amendment? It's not a different standard. It's sort of, if you have a witness who appears, as in every single case that we were ordered to be familiar with, in every single case the witness appeared on the witness stand or whatever the mechanism might have been, and they testified. Now, part of their testimony may have been, like in Sharp, that she refused to talk about the actual assault. But she talked about everything up to that, including being pulled into the room, being pushed down, the fact that she said no continuously, and who she talked to afterwards. So the only thing that she refused to talk about was the act. We are not claiming, well, the witness didn't get to be cross-examined on this particular thing. The witness in this case didn't testify at all. And in every other case, Sharp, Laura, Benno, Bryant, Cordova, Garcia, Cordova, Sunling, the witnesses testified at trial. They testified. They had lengthy question-and-answer sessions with the state, and they were available. One of the problems with this argument is how lengthy is lengthy enough when you're talking about direct examination? As Justice Holder-Roy points out, this child did answer some things, was responsive to some questions. Is that enough? Was he having more trouble as the questioning went on? But again, in 2009, three years before this case was tried, and again in People v. Sharp, in 2009 in People v. Bryant, this court said the key inquiry in determining whether the declarant is available for cross-examination is whether the defendant declared it was present for cross-examination and asked questions of her asked by defense counsel. Counsel asked no questions in this case, and you're asking us to infer that his doing so would have led to failure. You may be right, but I don't see why we should infer it. I don't see why we shouldn't require counsel. What could be easier than when your defense counsel in a situation like this in the court has said, Mr. Defense Counsel, do you have any questions? To ask. Now we have no questions about it. For instance, it's possible, it's not likely, but it's possible, she would have responded, and then we would be in a situation where you'd have us reversing a conviction based on speculation that would have proved unfounded had defense counsel entirely within counsel's ambit chosen to ask. It is always the state's burden to prove their case. It is their burden to bring witnesses to trial and to present evidence, and when they bring a witness who essentially doesn't testify and then shuts down, to make a defense attorney try and elicit answers from a four-year-old who appears to have shut down, is upset, is nonverbal, should not be required. This is not a case where there's memory loss and there was a strategic decision for the defense attorney not to ask her questions. She, as a witness, she was incapable of being part of the trial, and that is why all parties, the state, the court, and defense counsel, agreed that she was unavailable. And because she was unavailable, her statements to Officer Hogren, which were testimonial hearsay, under even the narrowest interpretation of testimonial hearsay, should not have come in. If the trial court thought she was unavailable, why did the court let in the 115-10 statements? Well, may I respond? Yes, go ahead. Under 115-10, if you're just looking at the statute, the witness has to be unavailable for the statement to come in. No, it doesn't. Or she has to be available to testify. Those are the two prompts. Yes, but if she's not available to testify, why did the trial court let in the 115-10 statements? He said that it wasn't testimonial hearsay, so it didn't violate the confrontation clause. You don't agree with that? No, I don't agree with that. Good point. Okay, thank you, Counsel. Thank you. Mr. Manchin? May it please the Court, Counsel? Counsel. This case presents an interesting issue, as your Honor pointed out, by asking us to address these questions, because originally when I looked at this brief, I, like Defense Counsel, said, okay, everybody agreed below, if the witness isn't available, I'm not going to address the issue. And I sure wish I had done it the other way. But I think that having looked at these cases a second time, according to your direction, I think that the child witness here was available for purposes of confrontation. The case's law is clear that if the defendant is going to complain about lack of availability, they have to object or have to try to cross-examine. If they don't try to do that, they have waived the claim that the witness was unavailable. I believe that was the people, Garcia Cordova, which held that if you don't object or you don't try to cross-examine the witness, you have waived the claim that the witness was not available. That was Justice Zinoff of the Second District? I don't remember which judge. Go ahead. It was the majority in Garcia Cordova. The claim of lack of availability was waived when you didn't try to cross-examine. We have a witness who was able to answer some questions. So this is not where she just sat there from the very start to answer no questions at all. She was available. Counsel was given the chance to ask questions and simply did not. I think this is very close to the cases of Sharp where the witness testified to anything but the crime. It's the same type deal. They have a witness who's willing or able to answer questions about who do you live with? Do you know the respondent? Of course the difference in Sharp was the complaining witness on the witness stand was totally responsive on cross-examination to the general sort of questions she was asked. But she was not asked on cross any questions dealing with the alleged criminal conduct of the defendant on trial. And that was the issue raised on appeal that counsel shouldn't have had to ask her. But she was required, as the Learn case seemed to suggest, to establish culpability through her direct examination. It couldn't come simply through 115-10 statements. Well, the holding in Learn that the witness has to testify about the alleged offenses has subsequently been backtracked by the Second District in its later decisions. Pretty much everybody, isn't it? Yeah. By its own court. Learn has yet to be signed approvingly by anyone. That's correct. And it has expressly been rejected even by the same court that decided it. To be available, the witness does not have to give accusatory testimony at trial. So I think that under this court's decision in Sharp that the witness was available and any claim of unavailability was waived when the defense counsel didn't try to ask the further questions. The witness was there in the courtroom. She was answering some questions. She was showing some difficulty. If the counsel could have cross-examined her just on some of the same type of questions the prosecutor had asked about home life, school, friends. What about the argument, Mr. Manchin, that Ms. Hart makes implicitly that we're requiring the defense to engage in essentially a nugatory act because it's obvious in this record that the kid was never going to respond. And therefore, why should we require the defense to actually cross-examine when it's so obvious?  I think, like you say, which is better? To have the defense counsel sit silent and then take his chances on winning on appeal or answering a couple of non-incriminatory type questions and getting the no response from the witness. As a judge, this witness is not available. I think the second way is the better way to go rather than let the defense counsel play two craps to gamble, okay, I'm not going to ask any questions and we'll get a reversal because this comes in because the witness is not available and we can speculate that if I had asked the questions, she would not have responded. We've got a chance of winning there or a chance of getting the statement excluded later on by saying, hey, this witness was never available because she never answered any of the state's questions. So I think the better rule is to require the defense counsel to at least make the effort to ask a few questions before you say, okay, this witness is completely unavailable. When you have a witness who's present, answering some questions, showing some difficulty. If this was a case where the child had come in and wouldn't even answer what you said, your name, no matter how many times you asked that and just broke down in tears from the very start, it would be a different situation because there would have been no appearance to testify because you just did nothing. But here she does answer some questions and to avoid disturbing the child, the prosecutor decides not to ask any further questions at that point. It is no great burden on the defendant at that point when you put this type of witness to ask a few questions that don't even have to go to the merits of the crime to show that this witness is not able to answer any of my questions either. And to say that now we should anticipate that the child was never going to answer any further questions and because she was never going to answer any questions, she was never available. So I think that the child was available and we don't need to get into the question of whether there was a, she did testify, so there's no confrontation problem. And if this court does decide that she was unavailable, I think the trial court was correct and its determination below that the statements of the police officer was non-testimonial in nature. Okay, thank you counsel. Other questions? Ms. Hart? One of the problems here with this issue of available or unavailable is that at trial no one disagreed that Maya was unavailable. And defense counsel had no reason to think that he needed to ask any questions because every party president in that courtroom saw that she was unavailable, believed her to be unavailable. The trial court looked at the facts and made a determination, a legal determination that she was unavailable. And for us to come here now and for the state to say that we have waived Well none of the answers to my very first question, none of this unavailability discussion occurred until after the witness was tended to defense counsel for cross-examination and counsel said I have no questions. Again, So there's no question of reliability or waiver or forfeiture or anything else? The court fully believed that the state would bring the witness back and then But that again is after the fact. The moment of the focus it seems to me, Ms. Hart, has to be that moment in time when the state said I have no more questions, the court turns and tenders the witness to defense counsel. At that point there's no discussion about unavailability. At that point there's no discussion about bringing the witness back. At that point the ball was placed in defense counsel's court to ask any questions across that he wished. And he declined. Again, I don't believe that you can look at just that moment in time. You have to also look at the trial court's ultimate articulation that the witness was unavailable, which all parties agreed to. Because it was clear to the parties who were there in this courtroom, in this jury room, that she was unavailable. It was clear that counsel couldn't have relied on the court's ruling that she was unavailable in making the decision to not cross-examine. That's the point. Regardless, if at that point the court, and in the subsequent discussion as to whether Officer Hogren should testify, could testify, it was assumed that the state was going to try and bring her back. And it's clear from both the transcript that has been attached to the brief and from the subsequent discussion on the record that not one of those three people, the court, the state, or defense attorney, thought that she was available. They all thought she was unavailable due to not just what she says on the record, but everything. Her physical presence, her mannerisms, what she looked like, how she acted in the courtroom, which is not something that we necessarily, removed as we are, can determine. And that's one of the reasons why courts of review generally, in a situation like this, they defer to the court's discretion. But there was no exercise of discretion when the witness was tended to defense counsel. There was no interference with defense counsel's asking this question. And it really comes down to this question, why should we be willing to question, the speculation being, it might very well be accurate. She wasn't going to testify. Why should we be willing to do that when how easy would it be just to ask some questions and confirm the speculation? Because before a defense attorney or a defendant is obligated to cross-examine a witness, that witness has to testify undirect. And that didn't happen in this case. And under the Sixth Amendment, that violated great MP's rights because testimonial hearsay was admitted against him. If this court has no further questions. Just a quick comment. As you mentioned, I had asked the parties to address these cases. And I wanted to mention, Ms. Hart, that on behalf of your client, you did an excellent job of doing so. I'm very impressed with your analysis. And I thought you gave a very good accounting from the defense point of view of trying to argue those cases. Okay. We'll be in recess until next month, I think.